UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MARCOS RAYOS,

                Plaintiff,                Case No. 1:15-cv-1153

v.                                                Honorable Paul L. Maloney

WILLIE O. SMITH et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington and Smith. The Court will serve the complaint against Defendants Huss, Nevins, Thurby, Kelly, Ryske, Kerr, Sanders, Guiles, and Scott.

**Discussion**

I.  Factual allegations

Plaintiff Marcos Garcia Rayos presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP), though the actions about which he complains also occurred while he was housed at the Ionia Correctional Facility (ICF). Plaintiff sues MDOC Director Heidi E. Washington, MBP Assitant Deputy Warden Erica Huss, and the following ICF officials: Warden Willie O. Smith; Inspector Kristoffer Nevins; Assistant Resident Unit Supervisor (ARUS) Lloyd E. Thurby; Sergeants John F. Kelly and Shawn Ryske; Correctional Officer E-9, Security Threat Group (STG) Coordinator (unknown) Kerr; and Correctional Officers (unknown) Sanders, (unknown) Guiles, and Amy J. Scott.

On January 16, 2014, while working his prison job in the gym weight room, Plaintiff was attacked from behind by an unknown prisoner using a razor. Plaintiff's face was slashed. The assault followed a series of threats that Plaintiff had received from gang members. Plaintiff told Defendant Thurby on November 27, 2013 that he had received threats from gang members and that he wished to be taken into protective custody. Thurby told Plaintiff to submit a kite, which Plaintiff did on December 5, 2013. Thurby met with Plaintiff the following day, but denied Plaintiff's request for protection unless Plaintiff "snitched" on the prisoners who had weapons or produced a weapon. (Compl., ECF No. 1, PageID.4.) Plaintiff did not know who had weapons, and he did not possess any weapons, so he was returned to his cell. On December 12, 2013, he spoke to Defendant Scott while she was making her rounds, and he asked to speak with a sergeant. He was pulled from his cell, and he spoke to Defendants Scott and Kelly, informing them of the threats he was receiving and asking to be placed in protective custody. Kelly told

him that his concerns would be addressed on Monday morning, but he could not be placed in protective custody unless something happened to him. Kelly encouraged Plaintiff to keep talking to his ARUS.

On December 17, 2013, Plaintiff sent a kite to Inspector Nevins, informing Nevins of his attempts to be placed in protective custody and advising Nevins of the gang threats. Nevins did not respond. On December 25, 2013, one of the gang members was put in segregation, pending transfer. No administrators were available during the holidays.

On January 16, 2014, while Plaintiff was in the prison library, two known gang members approached him and told him "to lock up or [he] would be stabbed." (*Id.*, PageID.5.) The librarian told the two prisoners to leave the library. Plaintiff left shortly thereafter, at about 4:30 p.m., and went back to his cell. He told an unidentified correctional officer that he needed immediate protection. The officer told him to go to his cell and advised him that the shift command would be notified. At approximately 6:10 p.m., Plaintiff's cell door opened, and he was told to report to work in the gym. Plaintiff placed another kite addressed to Nevins in the kite box, and then he went to work. When he arrived at the gym, he passed through a metal detector and was pat-searched and screened by Defendant Guiles. After he entered the gym, Plaintiff checked the trash cans to determine whether they needed to be cleaned, and then pulled out the recreation equipment. Defendant Guiles remained in the hallway. The other officer on duty, Defendant Sanders, stayed in the office, in the dark, with her feet on the desk. Plaintiff entered the office to change the trash bags, and he noticed that Defendant Sanders was snoring. He woke her up, and he was told to leave the office because she was working a double shift, and the trash bags did not need changing. Toward the end of his work shift, he noticed another prisoner standing at the doorway of the dark office. He went to see if the prisoner needed some equipment, and he was told no. Plaintiff left the

office. The recreation period ended at 7:00 p.m. Plaintiff again entered the office to find a spray bottle, and he woke Defendant Sanders. She ordered him out of the office. As he left the offfice, Defendant Guiles was telling the unknown prisoner repeatedly to leave because he was not authorized to be there. Plaintiff went into the weight room to wipe down the sweaty benches. He was attacked from behind and cut across his face with a razor blade. Plaintiff's glasses fell off and his assailant ran out. Plaintiff yelled for help, but the assailant ran back into the room to fight. Plaintiff alleges that he fought back, in fear for his life. The assailant again ran out of the room. Defendants Sanders and Guiles ordered both prisoners to the floor. Plaintiff was taken to segregation and subsequently received medical treatment. Later that evening, Sanders issued Plaintiff a disciplinary misconduct ticket for fighting, ostensibly based on video surveillance. When an unidentified sergeant reviewed the ticket, Plaintiff asked why no officers were in the gym at the time of the attack. The officer told him he did not know. Plaintiff wrote a grievance and exhausted it at all levels.

Plaintiff spoke with Defendant Smith on January 26, 2014, asking to speak with Defendant Nevins and providing a kite for Nevins. On January 27, 2014, Plaintiff was pulled from his segregation cell and interviewed in the day room for approximately two hours by Defendant Kerr. Kerr told Plaintiff that she had spoken with the assailant, who had told her that he committed the assault at the direction of gang members. Kerr told Plaintiff that, if he would corroborate the assailant's story about prisoners Thomas, Williams and King, so that she could place them on STG-II, she would have his misconduct pulled and give him protection. Kerr then went and spoke with Defendant Ryske in the main hall area. When she returned, she informed Plaintiff that he could not receive protection unless he told them what prisoners had weapons or gave them weapons. Plaintiff informed Kerr that he had no weapons and did not know of any prisoners

who had them. As a result, Plaintiff was returned to his cell. The following morning, Plaintiff sent yet another kite to Defendant Nevins about his concerns.

On January 28, 2014, Plaintiff received a hearing on his misconduct ticket. That same day, he was called out to speak with Michigan State Police Detective Sergeant Christian Clute, who made a tape-recording of Plaintiff's statement about the threats and his many attempts to obtain protection. Clute asked Nevins about the kites sent by Plaintiff. Nevins reported that he received many kites each day.

On April 1, 2014, Deputy Warden Erica Huss conducted a security classification committee meeting with Plaintiff. Plaintiff explained that he was assaulted by a gang member and he did not want to be placed in general population, but wanted protective custody. Instead, Plaintiff was released from administrative segregation and placed in a general-population, gang-control unit that prisoners called the "Bee-hive." (*Id.*, PageID.8.) Shortly thereafter, Plaintiff sent another kite to Defendant Kerr, the E-9 STG Coordinator, informing her of the new threats he was receiving. Kerr turned over Plaintiff's kite to inspector Nevins, who called Plaintiff to the control center. Plaintiff spoke with Nevins for about 30 minutes, advising that he did not feel safe and wished to be placed in segregation. Instead, on April 23, 2014, Plaintiff was transferred to the MBP, which prisoners have nicknamed "Gang Land." (*Id.*, PageID.9.)

On December 14, 2014, Plaintiff was assaulted by another prisoner while he was performing his duties as a housing unit porter. Plaintiff later learned from Correctional Officer Schroder that, the night before Plaintiff was attacked, Prisoner Lutz had been placed in segregation and had told Schroder that a gang threatened to stab Plaintiff with a nail while he was in the shower. Plaintiff also subsequently learned that prisoners transferring in to MBP had brought copies of the state police report

about Plaintiff's statement concerning the attack at ICF. The attacker who had cut Plaintiff's face had distributed a copy of the report and had labeled Plaintiff a "rat," leading to the subsequent attack at MBP. Plaintiff filed grievances about the events and made the Ionia County Circuit Court and crime victim's office aware of the issue. Plaintiff also complains that Defendant Huss, whom Plaintiff had informed about the threats while she worked at ICF, had transferred to the MBP, but she did nothing to ensure Plaintiff's safety at either location.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Washington and Smith

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010,

1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendants Washington and Smith in the body of his complaint. His allegations therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Even assuming that Plaintiff intends to allege that Defendants Washington and Smith failed to properly supervise their subordinates, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington and Smith engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Remaining Defendants

On initial review, the Court concludes that Plaintiff's allegations are sufficient to warrant service of the complaint on the remaining Defendants.

### III. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel (ECF No. 4). Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel therefore will be denied.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington and Smith will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Huss, Nevins, Thurby, Kelly, Ryske, Kerr, Sanders, Guiles, and Scott. The Court also will deny Plaintiff's motion to appoint counsel.

An Order consistent with this Opinion will be entered.


Dated:   December 1, 2015            /s/Paul L. Maloney
                                                               Paul L. Maloney
                                                               United States District Judge