UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCOS RAYOS,

        Plaintiff,

v.

WILLIE O. SMITH, *et al.*,

        Defendants.

                                  /

Case No. 1:15-cv-1153

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants' motion for summary judgment for lack of exhaustion (ECF No. 87).

**I.    Background**

Plaintiff's original complaint contained allegations related to two different incidents. The first incident occurred at Ionia Correctional Facility (ICF) on January 16, 2014, when plaintiff alleged that defendant MDOC Director Heidi Washington and ICF defendants Warden Willie O. Smith, Inspector Khris Nevins, Assistant Resident Unit Supervisor (ARUS) Lloyd Thurlby, Sgt. John Kelley, Sgt. Shawn Ryske, Security Threat Group (STG) Coordinator Jill (Kerr) Salik, Corrections Officer (CO) Ben Guiles, CO Amy Scott, and CO Theresa (Sanders) Green failed to protect him from being attacked and injured by another prisoner at the facility. Compl. (docket no. 1, PageID.4-9). On April 14, 2014, plaintiff was transferred to Marquette Branch Prison (MBP). *Id.* at PageID.9. The second incident occurred on December 14, 2014, when plaintiff alleged that

defendant MBP Assistant Deputy Warden Huss failed to protect him from an attack by another prisoner at that facility. *Id.* at PageID.9.

On initial screening, the Court dismissed defendants ICF Warden Smith and MDOC Director Washington. *See* Order for partial dismissal (docket no. 8). This Court subsequently severed plaintiff's claim related to MBP Assistant Deputy Warden Huss. *See* Order (ECF No. 69). After the dismissal and severance, the following defendants remain, all of whom are employed at ICF: Inspector Nevins, ARUS Lloyd Thurlby, Sgt. Kelley, Sgt. Ryske, STG (Kerr) Salik, CO Ben Guiles, CO Scott, and CO (Sanders) Green. After defendants moved for summary judgment, plaintiff moved to amend and supplement his pleadings. In granting plaintiff's motions, which involved minor amendments, the Court found that "these changes will not affect the substance of the claims for purposes of addressing defendants' outstanding motion for summary judgment (docket no. 87)." *See* Order (ECF No. 109).

## II. Defendants' motion for summary judgment

### A. Legal standard

Defendants have moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

### 1. Exhaustion requirement

The Prison Litigation Reform Act of 1995 (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

3

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not

4

receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Plaintiff's amended complaint arose out of defendants' alleged failure to protect him from injuries sustained on January 16, 2014. On that date, while plaintiff was performing his prison work assignment, he was attacked by an unknown prisoner who used a razor to slash plaintiff's face. *See* Opinion (ECF No. 7, PageID.35). Plaintiff alleged: that the attack followed a series of threats that he received from gang members; that he submitted a kite about being taken into protective custody on December 5, 2013; that he spoke with ARUS Thurlby on December 6, 2013; that he spoke to other defendants in December, including Sgt. Kelley, CO Scott, and Inspector Nevins; that COs Guile and (Sanders) Green were on duty at the gym when the attack occurred; that CO (Sanders) Green was sleeping in the gym office; and, that after the attack, CO (Sanders) Green issued plaintiff a disciplinary misconduct for fighting. *Id*. at PageID.35-37; Order (ECF No. 109, PageID.680). After the attack, plaintiff spoke with STG Coordinator (Kerr) Salik, who told plaintiff that the assailant told her that he attacked plaintiff at the direction of gang members, and if plaintiff would corroborate the assailant's story about the other prisoners so that she could place them on STG-II, she would have his misconduct pulled and give him protection. Opinion at PageID.37. Shortly thereafter, STG Coordinator (Kerr) Salik spoke with Sgt. Ryske in the main hall area, and then returned to tell plaintiff that he could not receive protection unless he told them which prisoners had weapons. *Id*. Plaintiff sent kites to Inspector Nevins, but it is unclear whether she responded to any of the kites. *Id*. at PageID.37-38. Plaintiff had a hearing on his misconduct ticket on January 28, 2014, but did not allege the outcome of the hearing. *Id*. at PageID.38; Compl. at PageID.8.

5

Plaintiff was interviewed by the Michigan State Police on February 28, 2014. Compl. at PageID.8. As discussed, *supra*, plaintiff was transferred to MBP on April 14, 2014.

The MDOC's Step III grievance report indicates that the only grievance concerning the January 16, 2014 incident is ICF-14-02-0265026z ("265"). *See* MDOC Step III grievance report and grievances (ECF No. 88-3, PageID.425-450). Contrary to MDOC PD 03.02.130 ¶ R, grievance 265 did not identify any staff member. Plaintiff stated the problem grieved as follows (in his words):

> On 1-16,14, I was attack in the face with a razor. At the time of assault, there was no staff present. My attacker was'nt suppose to be in the gym. He was'nt to be outside of his unit. This razor was smuggled through a metal detector. Also Level 5 are not allowed to buy razors. There is supposed to be staff presence at all times, to ensure safety or prisoners, staff and security of the facility. Due to this inattention and dereliction of duty my safety extremly jeopardized, security of the facility was breached and I was assaulted which has resulted in a life time scar on my face.

Grievance 265 (ECF No. 88-3, PageID.434).

Grievance 265 was rejected as untimely because it was not received until February 5, 2014. *See* Step II Response (ECF No. 88-3, PageID.433).[1] Plaintiff appealed to Step II stating that his grievance was not late and that he "cannot control the mail run process." *See* Step II Grievance (ECF No. 88-3, PageID.432). The rejection was upheld at Step II. *See* Step II Response at PageID.433. At Step III, the MDOC stated that the rejections at Steps I and II were improper and denied the grievance on the merits, stating in pertinent part:

> Your Step III grievance, including any materials included with your appeal from Step II, has been fully reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". You claimed that on 1-16-14 you were attacked in the gym and cut in the face with a razor. You claimed that staff are supposed to be present at all times

---

[1] Defendants' Step II response summarized the Step I response, stating that it was rejected as untimely. The Step II response made no mention of plaintiff's failure to identify the individuals grieved.

6

in the gym, but the officer who was supposed to be present was inside the gym office with all the lights turned off, asleep.

Your grievance was rejected at Step I as being untimely, because the date of incident listed on the grievance form was 1-16-14 and the grievance was not received at Step I until 2-5-14. The rejection was upheld at Step II.

Review of your complaint at Step III does not support rejection as untimely. PD 03.02.130 states in Paragraph Q that "A grievant in a CF A institution may file a Step I grievance directly with the inspector of the institution at which the prisoner is housed instead of with the grievance coordinator as set forth in Paragraph V if the grievance alleges conduct which falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140 "Internal Affairs"; this includes claims alleging staff sexual misconduct. All grievances alleging such conduct, whether filed with the inspector or a CFA or FOA grievance coordinator, shall be referred to the Internal Affairs Division for review as set forth in PD 01. 01.140 "Internal Affairs" even if they would otherwise be rejected under Paragraphs F or G; however, duplicative grievances may be rejected."

The alleged conduct presented in this grievance falls under the jurisdiction of Internal Affairs as set forth above, therefore rejection as untimely was inappropriate. The grievance identifier number has been changed to reflect a staff corruption issue rather than a rejection. The record indicates that the incident was thoroughly investigated pursuant to PD 01.05.120 "Critical Incident Reporting". No evidence has been found to substantiate your complaint of staff misconduct prior to the alleged assault on you. Therefore, your grievance appeal is denied. It is noted that you were transferred to MBP on 4-23-14.

Step III Response (ECF No. 88-3, PageID.431).

Based on the foregoing, it appears that the MDOC recognized that grievance 265 was improperly rejected at Steps I and II, and treated plaintiff's Step III appeal on the merits as though it was the original grievance filed at Step I. In his Step III appeal, plaintiff identified actions taken by five MDOC employees on specific dates: on December 6, 2013, plaintiff brought the problems with gang members to the attention of ARUS Thurlby who "failed to do anything about [plaintiff's] issues"; on January 16, 2014, CO (Sanders) Green, who "was supposed to be watching prisoners," was inside the gym office with the lights turned off and asleep at the desk; CO Guiles (identified as

"Giles") was in the gym area when the incident occurred on that date; and, that on January 27, 2014, STG Coordinator (Kerr) Salik told plaintiff that she and Inspector Nevins "had recieved [sic] numerous kites 2-weeks in advance that this prisoner was planning to stab me in the gym." Step III appeal (ECF No. 88-3, PageID.435). While the Step III appeal mentions that plaintiff "brought these issues to the attention of C/O Scott and Sgt. Kelly [sic]," plaintiff does not identify which issues he brought to their attention or when he did it. *Id*. Finally, the Step III appeal does not mention Sgt. Ryske. *Id*.

The Court agrees with defendants that plaintiff's Step I grievance was fatally flawed because it did not identify any MDOC employee. If that grievance had been rejected through Step III, then I would recommend granting defendants' summary judgment for lack of proper exhaustion. However, at Step III, the MDOC found that the rejections at Steps I and II were improper, and reviewed the merits of the grievance as one involving staff corruption as set forth in the Step III appeal. Under these circumstances, the MDOC waived procedural defects when it found the rejections improper and addressed the Step III appeal as though it was the original grievance. "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). Based on this unique record, I conclude that plaintiff has exhausted the following claims: that on December 6, 2013 ARUS Thurlby failed to address plaintiff's problems with gang members; that on January 16, 2014, CO (Sanders) Green failed to supervise the gym where the attack occurred; that on January 16, 2014, CO Guiles failed to operate the metal detector allowing the attacker to bring a weapon into the gym; and that on January 27, 2014, STG Coordinator (Kerr) Salik and Inspector Nevins admitted to plaintiff that they had prior

8

knowledge that gang members had planned to attack plaintiff in the gym. However, plaintiff has failed to properly exhaust any claims against the remaining defendants Sgt. Kelley, Sgt. Ryske, and CO Scott. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, to the extent defendants' motion seeks summary judgment for lack of proper exhaustion, the motion should be granted as to defendants Sgt. Kelley, Sgt. Ryske, and CO Scott, and denied as to defendants ARUS Thurlby, CO (Sanders) Green, CO Guiles, STG Coordinator (Kerr) Salik, and Inspector Nevins.

### C. Eleventh Amendment Immunity

Defendants also seek immunity from plaintiff's claims brought against them in their official capacities. Plaintiff's claim for monetary damages against each defendant in his or her official capacity is barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Accordingly, defendants' motion for summary judgment should be granted as to the "official capacity" claims.

### III. Recommendation

For these reasons, I respectfully recommend that the motion for summary judgment on (ECF No. 87) be **GRANTED** as to all defendants with respect to the official capacity claims.

I further recommend that to the extent defendants' motion seeks summary judgment for lack of proper exhaustion, the motion should be **GRANTED** as to defendants Kelley, Ryske, and Scott and **DENIED** as to defendants Thurlby, (Sanders) Green, Guiles, (Kerr) Salik, and Nevins.


Dated: August 10, 2017    /s/ Ray Kent
RAY KENT
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).