UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCOS RAYOS,

        Plaintiff,

v.

WILLIE O. SMITH, *et al.*,

        Defendants.

_____/

Case No. 1:15-cv-1153

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

**I.**    **Background**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. Plaintiff's complaint alleged that he was attacked by other prisoners at two different correctional facilities. The first incident occurred at Ionia Correctional Facility (ICF) on January 16, 2014. Compl. (ECF No. 1, PageID.4- 9). Plaintiff alleged that MDOC employees failed to protect him from the attack. Plaintiff sued MDOC Director Heidi Washington and the following employees at ICF: Warden Willie O. Smith; Inspector Khris Nevins; Assistant Resident Unit Supervisor (ARUS) Lloyd Thurlby; Sgt. John Kelley; Sgt. Shawn Ryske; Security Threat Group (STG) Coordinator Jill [Kerr] Salik; Assistant Deputy Warden (ADW) Huss; and Corrections Officers (CO's) Ben Guiles, Amy Scott, and Theresa [Sanders] Green.[1]

---

[1] For purposes of this report, the Court will refer to defendant Kerr as "Jill Salik" and defendant Teresa Sanders as "Teresa Green".

The MDOC transferred plaintiff to Marquette Branch Prison (MBP) in April 2014. *Id*. at PageID.9. The second incident occurred several months later on December 14, 2014, when plaintiff alleged that ADW Huss, who was working at MBP, failed to protect him from an attack by a prisoner at that facility. *Id*. at PageID.9.  ADW Huss was aware of plaintiff's situation, because she had interviewed plaintiff after the assault at ICF.   *Id*. at PageID.8.

Defendants Washington, Smith, Kelley, Ryske, Scott, and Thurlby have been dismissed from this action. *See* Orders (ECF Nos. 8, 119, and 219).[2] Five defendants remain: ADW Huss; Inspector Nevins; STG Coordinator Salik; CO Guiles; and CO Green (collectively referred to as the "MDOC defendants"). This matter is now before the Court on plaintiff's motion for partial summary judgment against defendants Sanders [Green] and Guiles (ECF No. 184), MDOC defendants' motion for summary judgment (ECF No. 196), and plaintiff's motion for partial summary judgment against defendants Huss and Nevins (ECF No. 202).

## II.     Motions for summary judgment

### A.     Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[2] The Court notes that ARUS Thurlby passed away in 2018.

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Plaintiff's claims

#### 1. Plaintiff's complaint

Plaintiff's allegations are summarized as follows. In November and December 2013, plaintiff alerted ARUS Thurlby that he had received threats from gang members and wanted protection. Compl. at PageID.4. Thurlby denied plaintiff protection unless he "snitched" on prisoners with weapons or produced weapons. *Id*. On December 17, 2013, plaintiff sent a kite

3

to Inspector Nevins stating that he feared an attack by gang members, but Nevins did not place him in protection or respond to the kite. *Id*. at PageID.5.

On January 16, 2014, plaintiff was in the prison library when he was approached by two known gang members and "told to lock up or I would be stabbed." *Id*. at Page ID.5. The librarian told the gang members to leave the library. *Id*. Plaintiff went back to his cell and told an unidentified corrections officer that he needed protection "now." *Id*. At about 4:30 p.m., while in his cell, plaintiff wrote a kite to Inspector Nevins about the incident. *Id*. Plaintiff was told to report to work at the gym at 6:10 p.m. *Id*. Plaintiff placed the kite in the kite box and proceeded to the gym. *Id*.

Plaintiff passed through the metal detector at the gym and was patted down by CO Guiles. *Id*. at PageID.6. As plaintiff began his work in the gym, he noticed CO Green in the office with the lights turned off, leaning in the chair with her feet on the desk. *Id*. at PageID.6. CO Guiles was in the hallway, leaving CO Green "to supervise the level 5 maximum security prisoners alone." *Id*. CO Green was in the office snoring. *Id*. Plaintiff woke her up and was told to leave the office because she was working a double shift. *Id*. Sometime around 7:00 p.m., when plaintiff went to wipe down some benches, he was attacked from behind by an unknown prisoner who cut his face with a razor blade. *Id*. Plaintiff began to fight for his life. *Id*. CO's Green and Guiles entered the room and ordered the two prisoners to the floor. *Id*. Plaintiff was taken to segregation and received medical attention. *Id*. Plaintiff received a disciplinary misconduct from CO Green based on the video surveillance. *Id*. at PageID.7. Plaintiff claimed that there was no staff in the gym at the time of the attack. *Id*.

Sometime after the attack, on January 26th or 27th, STG Coordinator Salik told plaintiff that she spoke to the assailant (later identified as prisoner Winston), who told her that he attacked plaintiff under the direction of gang members. *Id*. at PagerID.7. Salik told plaintiff that if he would corroborate the story, she would pull his misconduct and give him protection. *Id*. Plaintiff stated that he did not know the inmates but wanted protection. *Id*. Plaintiff had a major misconduct hearing on January 28th, and was called out by the Michigan State Police to give a recorded statement on February 28th. *Id*. On April 1st, ADW Huss held a Security Classification Committee (SCC) hearing. *Id*. Plaintiff's request for protective custody was denied and he was placed in the general population where he received new threats. *Id*.

Plaintiff was transferred to MBP on April 23, 2014. *Id*. at PageID.9. Several months later, on December 13, 2014, plaintiff was attacked by an unknown prisoner at MBP. *Id*. Plaintiff later learned that prisoners riding into MBP had copies of the Michigan State Police Report containing plaintiff's statements regarding the attack at ICF. Plaintiff appears to contend that ADW Huss was aware of his situation and failed to protect him after Huss took a position at MBP. *Id*.

    **2.**    **Factual record**

The parties presented the following facts in support of their respective motions. In his deposition, plaintiff testified that prior to January 16, 2014 (i.e., in late November or early December 2013), he "had a run-in with a couple of gang members that were classified as STG, Dimas Garza, Luna-Briseno, and Anacieto." Rayos Dep. (ECF No. 197-3, PageID.1265). The three gang members wanted plaintiff to assault another prisoner named Larry Moore. *Id*. Plaintiff refused and "told them I wasn't doing it." *Id*. According to plaintiff:

5

> They tried to threaten me so I brought the attention up to [sic] ARUS Thurlby.  ARUS Thurlby told me to send him a kite.  I wrote him a kite. He called me out the next day, which was on the 6th of December. . . When he called me out he informed me that I could not seek protection unless I provided him with information on inmates. . .

*Id*.  Plaintiff did not know why the gang members wanted him to assault Moore, "but they were saying that he was providing information to the officers in the unit."  *Id*. at PageID.1267.

Plaintiff set forth additional facts in declarations executed pursuant to 28 U.S.C. § 1746.  Prior to the January 16th assault, plaintiff informed ARUS Thurlby and Inspector Nevins "of threats of assaults by known STG inmates" and that Thurlby, Nevins, ADW Huss and STG Coordinator Salik "all refused to provide me with protective custody before and after the assault." Decl. (ECF No. 186, PageID.1207).  Specifically, "after bringing to the knowledge of defendant Thurlby and other ICF staff of threats by known gang members and requesting protective custody," plaintiff sent Inspector Nevins a kite on December 17, 2013.  Decl. (ECF No. 203-1, PageID.1286).  In this kite, plaintiff stated that he has been requesting "P.C." (protective custody) since late November 2013 because he has been threatened by SUR-13 gang members Luna-Briseno and Latin Count Leader Garza to stab prisoner Moore.  Kite (Dec. 17, 2013) at PageID.1308.  Plaintiff told Luna-Briseno and Garza that he was not their flunkie and to do it themselves.  *Id*.  "I was told that if I do not they will have me stabbed."  *Id*.

As discussed, plaintiff alleged that he sent Inspector Nevins another kite shortly before the attack on January 16, 2014.  Inspector Nevins executed an affidavit in response to plaintiff's allegations, stating in pertinent part:

> 3. In response to Plaintiff's complaint, the Plaintiff indicates he wrote a kite to me and placed it in the kite box on January 16, 2014 at 1810 hours. The Plaintiff indicated he wrote the kite to notify me of the threats he allegedly received while in the law library on January 16, 2014 at 1630 hours. In his complaint the Plaintiff

6

    also states he was cut across his face with a razor blade, by an unknown prisoner while at his job assignment in the gym on the evening of January 16, 2014; after being cut the plaintiff admits he began fighting with the unknown prisoner. I do not recall receiving this kite, however; if I did receive this kite it would have been after the fight which occurred on the evening of January 16, 2014. The Plaintiff was placed in segregation after the fight he was involved in on January 16, 2014. Segregation is a protective environment, where no other prisoner would have been able to have physical contact with the Plaintiff, therefore; he would not have been placed in protection.

Nevins Aff. (ECF No. 205-1, PageID.1403-1404).

    According to plaintiff, CO Green and CO Guiles knowingly disregarded his safety and deliberately failed to protect him from the assault in the gym. Decl. at PageID.1207. CO Green "slept on the job and then left her post knowing the assailant was not authorized to be in the gym area." *Id*. CO Guiles "did not stay on post allowing prisoners in level 5 maximum security prison unsupervised in the gym." *Id*. Guiles also allowed Winston into the gym without proper authorization and through the metal detector with a homemade prison knife. *Id*.[3] Plaintiff was found guilty of a misconduct for fighting and was sent to segregation for 25 days. *Id*. at PageID.1208.

    Plaintiff also cited the interrogatory responses from CO Green and CO Guiles. In response to a question asking where she was posted during the January 16, 2014 incident, CO Green stated that she was in the Recreation Director's Office. Green Interrog. (ECF No. 203-1, PageID.1282). In response to a question asking where he was standing during the incident, CO

---

[3] Plaintiff filed another "Declaration under penalty of perjury" (ECF No. 208-1) in response to defendants' motion for summary judgment. While referenced as a declaration, this document is actually an affidavit based on plaintiff's "information and belief." *See* Decl. (ECF No. 208-1, PageID.1450. This is not sufficient to establish facts for purposes of a summary judgment motion. *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) ("statements made on belief or on information and belief, cannot be utilized on a summary-judgment motion") (internal quotation marks omitted).

Guiles states "I do not recall exactly where I was standing prior to responding to a call by C/O Sanders [Green] regarding a fight."  Guiles Interrog. (ECF No. 203-1, PageID.1285).

Plaintiff provided a declaration from prisoner Chris Rozner who stated:  that he was working out at the gym between 6 and 7 p.m. on January 16, 2014; that they were unsupervised; that he saw "a female guard asleep in the office chair through the connecting window with the lights out;" that CO Giles [sic] was talking to an inmate "telling him he wasn't allowed there at that hour;" and that "Giles said okay hurry up with what your [sic] doing or getting."  Rozner Decl. (ECF No. 185-1, PageID.1142). Rozner further stated that "Porter Rayos was involved in a fight."  *Id*.  Rozner stated that CO Guiles "was outside the Gym by the metal detector the entire time with another CO" and reiterated that "[t]he lady was asleep almost the entire Gym period there is a big connecting window [sic]."  *Id*. at PageID.1143.

Plaintiff acknowledged that after the assault, he was charged with fighting.  Decl. (ECF No. 186, PageID.1208).  CO Green issued the misconduct report against Rayos which described the violation as follows:

> On the above day and time (January 16, 2014) per video recording, Prisoner Winston #689549 ran up from behind Prisoner Rayos #311171 and cut him in the face with a sharp object.  Both prisoners then began throwing punches at each other.  I yelled in a loud clear voice 'Stop fighting.'  When I went to enter the Weight Room prisoner Winston ran out, I blocked the doorway so Prisoner Rayos could not come out until other staff arrived.  [P]risoner Winston [i]dentified by prison Identification card.

Misconduct Report (ECF No. 203-1, PageID.1393).  Plaintiff stated that he was found guilty of the charge, received punitive segregation and detention, and was reclassified as a serious threat to the physical safety of staff and prisoners.   Decl. (ECF No. 186, PageID.1208).

8

Plaintiff submitted a copy of a security reclassification notice signed by ADW Huss and Inspector Nevins in February 2014, which reclassified him to administrative segregation after being found guilty of fighting. *See* Notice (ECF No. 203-1, PageID.1310). Plaintiff also submitted a segregation behavior review form from April 1, 2014, which described his last misconduct as follows:

> On 1/16/14, Winston 689549 struck Rayos with a sharp object. Rayos turned and both prisoners started throwing punches at each other.

Segregation Behavior Review (ECF No. 203-1, PageID.1395).

Finally, with respect to the December 14, 2014 assault at MBP, plaintiff stated that as of April 1, 2014, he was on a waiting list for protective housing, and that he informed ADW Huss that he was attacked by a gang hit and did not want to go to general population. Decl. (ECF No. 203-1, PageID.1287).

### C.   Plaintiffs Eighth Amendment claims

### 1.   Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer*,

9

468 U.S. 517, 526 (1984). Inmates have a constitutionally protected right to health and safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions[.]" *Id*. at 844-45 (internal citations and quotation marks omitted). *See, e.g., Gilland v. Owens*, 718 F. Supp. 665, 688 (W.D. Tenn. 1989) (observing that the violent tendencies of inmates is not within the control of jail officials).

However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). To establish an Eighth Amendment claim that a prison official failed to protect an inmate, the inmate must show that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Id*. at 828; *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). "To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294, quoting *Farmer*, 511 U.S. at 829, 847. "Generally, a single isolated attack on an inmate cannot give rise to a deliberate indifference claim because the inmate will be unable to show that officials were consciously aware of the risk of an attack." *McDuff v. Addis*, No. 1:17-cv-912, 2018 WL 3239491 at *3 (W.D. Mich. July 3, 2018) (citing *Lewis v. McLennan*, 7 Fed. Appx. 373, 375 (6th Cir. 2001) (which affirmed dismissal of an Eighth Amendment claim because the plaintiff had not alleged any specific facts which would show that he was in danger of being assaulted by other prisoners). *See Stewart v. Love*, 696 F.2d 43, 44-45 (6th Cir. 1982) (a single, isolated attack

10

was insufficient to state a failure to protect claim).  Finally, because courts consider the reasonableness of a prison official's actions, the Supreme Court has instructed that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

### 2.   January 16, 2014 incident

#### a.   Defendants Salik and Huss

Plaintiff's allegations against STG Coordinator Salik and ADW Huss involve incidents which occurred after the January 16th attack. Accordingly, these two defendants should be granted summary judgment with respect to this incident.

#### b.   Defendant Nevins

Plaintiff claims that he alerted ARUS Thurlby in November or December, 2013, and sent a kite to Inspector Nevins on December 17, 2013.   Viewing the evidence in the light most favorable to plaintiff, the Court will assume that plaintiff sent this kite to Nevins identifying threats he received from inmates Luna-Briseno and Garza, and that Nevins received the kite. However, this kite does not support plaintiff's claim because he did not establish any connection between the gang members (Luna-Briseno and Garza) and the assailant (Winston) who attacked plaintiff one month later.

While plaintiff stated that he sent a kite to Inspector Nevins on January 16, 2014, there is no evidence that Inspector Nevins had the opportunity to respond to that kite, which plaintiff placed in the kite box after 6:00 p.m. and about an hour before Winston attacked him. Based on this record, plaintiff has not demonstrated that Nevins had knowledge of an impending

11

attack or could have prevented the attack later that evening. Even if plaintiff had demonstrated that Nevins received one or both kites, plaintiff's Eighth Amendment claim against Nevins fails because this was an isolated incident. *See Stewart*, 696 F.2d at 44-45; *Lewis*, 7 Fed. Appx. at 375.

      **c.**      **Defendants Green and Guiles**

Plaintiff contends that CO Green failed to protect him because she was sleeping on the job and that CO Guiles failed to protect him because he allowed Winston to bring a weapon into the gym. Assuming that both of these allegations are true, plaintiff's claim fails because this was an isolated incident which cannot serve as the basis for an Eighth Amendment claim against defendants. *See Stewart*, 696 F.2d at 44-45; *Lewis*, 7 Fed. Appx. at 375.

In addition, even if CO Green and CO Guiles failed to perform their duties at the gym as alleged in the complaint, plaintiff's claim fails because negligent conduct is insufficient to support an Eight Amendment claim. As one court explained:

> While sleeping on duty may be evidence of gross negligence on the part of the defendants, negligent conduct, even though it causes injury, is insufficient to state a claim of constitutional proportion. *See Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L.Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L.Ed. 2d 677 (1986); *see e.g., Sirmans v. Williams*, 2009 WL 1788186, *2 (N.D. Fla. 2009); *McCoy v. Woodall*, 2015 WL 5156697 (S.D. Miss. 2015) (dismissing under § 1915A allegation that guards, who were sleeping on duty, failed to protect plaintiff from assault in the middle of the night); *Shorter v. Russell*, 2014 WL 6909026 (D.S.C. 2014) ("[T]he allegation that Officer Russell was sleeping while the rape took place and failed to make his rounds, at best, shows negligence, which is not actionable under 42 U.S.C. § 1983."); *O'Brien v. Lewis*, 2004 WL 2123946, *8 (D. Or. 2004) ("Officer Merrill's falling asleep briefly does not amount to deliberate indifference. Although Officer Merrill may have had reason to believe that plaintiff was not getting along with other inmates, plaintiff has failed to show that Officer Merrill had more than a mere suspicion that the attack will occur. Additionally, simply showing that Officer Merrill was negligent in falling asleep is insufficient to show deliberate indifference.") (internal citation and quotation marks omitted).

*Vincent v. Hutton*, No. 716CV00016LSCTMP, 2016 WL 4055663 at *4 (June 13, 2016), R&R adopted, 2016 WL 4055645 (N.D. Ala. July 26, 2016). *See also, Tuttle v. Christie*, No. 14-CV-292-PB, 2015 WL 9239232 at *2 (Nov. 10, 2015), R&R adopted, 2015 WL 9216578 (D.N.H. Dec. 15, 2015) ("Even if the court were to assume that the defendant was sleeping or reading during the altercation, summary judgment on the Eighth Amendment claim would be proper because the record is devoid of any facts suggesting that the defendant was subjectively aware that [the assailant] (or any other inmate on the tier in CCU) presented a danger to [the assaulted prisoner] prior to the altercation."). Here, there is no evidence that either CO Green or CO Guiles were subjectively aware that Winston or any other prisoner at ICF presented a danger to plaintiff.

For these reasons, defendants Green and Guiles should be granted summary judgment.

### 3. December 14, 2014 incident

Plaintiff alleged that "[o]n December 14, 2014 I was assaulted by another prisoner while on my housing unit porter job detail [at MBP]." Compl. at PageID.9. While plaintiff moved for partial summary judgment against ADW Huss, he did not present any evidence to establish that Huss failed to protect him at MBP. For their part, defendants did not address this claim in their motion for summary judgment. Based on this record, genuine issues of material fact exist with respect to the incident at MBP. Neither party is entitled to summary judgment and plaintiff's case should proceed with respect to his claim that ADW Huss violated his Eight Amendment rights for failing to protect him from an alleged attack which occurred at MBP on December 14, 2014.

### 4. Qualified immunity

13

Finally, to the extent defendants seek summary judgment on qualified immunity, their claim should be denied. Defendants' brief does not develop a meaningful argument for this defense. Rather, defendants recite a lengthy legal standard for qualified immunity and then re-state their contention that "[d]efendants cannot be held liable under the Eighth Amendment for an isolated attack." Defendants' Brief (ECF No. 197, PageID.1258-1260).

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's motions for partial summary judgment against defendants Green [a/k/a Sanders] and Guiles (ECF No. 184) and defendants Huss and Nevins (ECF No. 202) be **DENIED**.

I further recommend that the MDOC defendants' motion for summary judgment (ECF No. 196) be **GRANTED** as to defendants Guiles, Salik [a/k/a Kerr], Nevins and Green [a/k/a Sanders], **GRANTED** as to plaintiff's claim against defendant Huss related to the January 16, 2014 incident, and **DENIED** as to plaintiff's claim against defendant Huss related to the December 14, 2014 incident.

I further recommend that defendants Guiles, Salik [a/k/a Kerr], Nevins and Green [a/k/a Sanders] be **DISMISSED** from this action, and that the case proceed against defendant Huss with respect to plaintiff's Eighth Amendment claim that Huss failed to protect plaintiff from the December 14, 2014 incident at the Marquette Branch Prison.

Dated:  March 4, 2019                          /s/ Ray Kent
                                               United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).